IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JEANNETTE STEVENS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | CV 114-240 |
| SOUTHERN NUCLEAR OPERATING | * | |
| COMPANY, INC., | * | |
| | * | |
| Defendant. | * | |
| | * | |
| | * | |

O R D E R

Currently before the Court is Defendant's motion for summary judgment. (Doc. 23.) For the reasons explained below, the Court **GRANTS** the motion.

I. Factual Background

This case arises out of Plaintiff Jeannette Stevens's employment with Defendant Southern Nuclear Operating Company.[1] Defendant operates three nuclear power plants under a license issued by the Nuclear Regulatory Commission ("NRC"), including

---

[1] Unless otherwise indicated, the facts contained in this Order are taken from Defendant's statement of undisputed material facts. (Doc. 23-2.) Plaintiff has failed to respond to these facts. And although Plaintiff is proceeding pro se in this matter, she is "not excused from the obligation to respond to a statement of material facts in the manner required by [Local Rule 56.1]." Mobley v. Chatham Cty., CV 408-221, 2011 WL 1226223, at *4 (S.D. Ga. Mar. 9, 2011) (citation omitted) (internal quotation marks omitted).

Plant Vogtle in Waynesboro, Georgia, where Plaintiff is employed as a nuclear security officer.

## 1. NRC Regulations

As a nuclear-power-plant operator, Defendant is required to follow numerous NRC regulations. Under these regulations, Defendant must implement a fitness-for-duty ("FFD") program. 10 C.F.R. § 26.21. The FFD program must "[p]rovide reasonable assurance that individuals are not . . . mentally or physically impaired from any cause, which in any way adversely affects their ability to safely and competently perform their duties . . . ." 10 C.F.R. § 26.23(b). The program must "[p]rovide reasonable measures for the early detection of individuals who are not fit to perform the duties that require them to be subject to the FFD program . . . ." 10 C.F.R. § 26.23(c). Further, the regulations require Defendant to maintain a Behavioral Observation Plan, which is used to "detect behaviors that may indicate . . . impairment from fatigue or any cause that, if left unattended, may constitute a risk to public health and safety or the common defense and security . . . ." 10 C.F.R. § 26.33. "Individuals who are subject to [FFD programs] shall report any FFD concerns about other individuals to the personnel designated in the FFD policy." Id. If an employee's "fitness is questionable . . . the licensee or other entity shall take immediate action to prevent the individual

2

from performing the duties that require him or her to be subject to [the regulations]." 10 C.F.R. § 26.77.

### 2. Defendant's FFD Policy

In accordance with NRC regulations, Defendant has implemented an FFD policy to ensure that its employees remain in compliance with those regulations. (Doc. 23-4 ¶ 7.) Under this policy, "individuals evidencing physical or mental impairment which may in any way adversely affect their ability to safely and competently perform their duties may be removed from duty" and referred for a determination of fitness ("DOF")[2] or to a company-approved doctor for evaluation. (Id. ¶ 11.) Employees who demonstrate "aberrant behavior" will be required to undergo a DOF. (Id. ¶ 12.) Aberrant behavior includes "sudden emotional outbursts, anger, or tears at the workplace." (Id. ¶ 12.) An employee may be removed from duty pending the outcome of a DOF. (Id. ¶ 13.)

### 3. Plaintiff's Employment

Plaintiff began working at Plant Vogtle as a nuclear security officer on January 5, 2009, and she is still employed in that position. As a nuclear security officer, Plaintiff is required to carry a weapon and is subject to the NRC regulations discussed above.

---

[2] A DOF is a process used to evaluate an individual who may be in violation of a licensee's FFD program. (Doc. 23-4 ¶ 11.)

### a. Plaintiff's May 2013 removal from work

In April 2013, Plaintiff's 8-year-old son tragically drowned. Following his death, Plaintiff remained out of work for thirty days and sought counseling. Plaintiff returned to work in May 2013, at which time she reported to Defendant's FFD Services Department. During this process, a resident nurse observed Plaintiff exhibiting aberrant behavior and, under Defendant's FFD policy, notified the FFD Services Department. Subsequently, Defendant placed Plaintiff on may-not-work status pending Plaintiff's FFD evaluation. In early June 2013, Defendant put Plaintiff on paid administrative leave while a DOF was completed. Eventually, Plaintiff's personal physician and one of Defendant's physicians determined that Plaintiff was not fit to return to work. In October 2013, Defendant's physicians cleared Plaintiff to return to work as an unarmed security officer, and she returned in November 2013.

### b. Plaintiff's January 2014 removal from work

In early January 2014, Defendant's FFD Services Department received a report that Plaintiff became emotional after her 2013 performance review. Two witnesses, Rebeckah Barringer and James March, witnessed this behavior. According to Mr. March, Plaintiff was crying and physically shaking. In light of these reports, Defendant placed Plaintiff on may-not-work status and requested an FFD evaluation. One of Defendant's physicians

4

determined that Plaintiff was not fit to return to work as an armed security officer, and Plaintiff returned to work as an unarmed security officer in early February 2014. In May 2014, Plaintiff regained her position as an armed security officer.

### c. Plaintiff's July 2014 removal from work

In July 2014, one of Plaintiff's coworkers reported that Plaintiff became emotional during one of her shifts. That same day, another employee reported that Plaintiff called him and informed him that she needed to leave work. During that shift, Plaintiff saw a child who reminded her of her son, which caused her to become upset. Because of this incident, Defendant once again placed Plaintiff on may-not-work status and required her to undergo another evaluation. Apparently, Plaintiff was cleared for work shortly after this incident, but the doctor who cleared her later determined that she was not fit for duty in September 2014. In April 2015, Plaintiff was cleared to return to work, and she returned in early May 2015.

### d. Plaintiff's workplace concerns

In September 2012, Plaintiff filed a workplace concern, in which she alleged that two of her coworkers forwarded pictures from her cell phone without her permission. In response to Plaintiff's concern, Defendant conducted an investigation into the matter and terminated the two employees' employment.

In August 2014, Plaintiff filed a second workplace concern, in which she alleged she was wrongfully denied a promotion, improperly removed from service in July 2014, and falsely accused of time-card theft. With respect to the time-card theft, in July 2014, Plaintiff's supervisor became suspicious that Plaintiff had improperly coded time. (Doc. 23-5 ¶ 12.) Accordingly, in August 2014, Defendant's HR Business Consultant, Kevin Gillenwater, suggested that an investigation into the matter be opened. (Doc. 23-6 ¶ 6.) The investigation did not uncover any wrongdoing, and Plaintiff was not punished. (Doc. 23-5 ¶ 12.)

## II.   Procedural Background

On September 18, 2014, Plaintiff filed a charge of discrimination with the EEOC. (Doc. 18 at 20.) In the charge, Plaintiff checked the box for disability discrimination and asserted that she was removed from her job because she was regarded as disabled. On December 29, 2014, Plaintiff initiated this action (doc. 1), and she filed an amended complaint on May 29, 2015 (doc. 18), which alleges that Defendant discriminated against her in violation of the Americans with Disabilities Act ("ADA") when it removed her from work and that Defendant retaliated against her in violation of the ADA. Defendant has moved for summary judgment. (Doc. 23.)

### III. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats &

Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant

or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. Additionally, although pro se litigants are entitled to some leniency, they must still establish that there is a dispute as to a material fact. Osahar v. Postmaster Gen., 263 F. App'x 753, 761 (11th Cir. 2008).

In this action, the Clerk of the Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary-judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 24.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### IV. Discussion

Defendant moves for summary judgment on Plaintiff's discrimination and retaliation claims. The Court addresses

these separately below.

**1. ADA Discrimination**

Under the ADA, it is unlawful to discriminate against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a discrimination claim under the ADA, a plaintiff must first establish a prima facie case of discrimination, which requires showing: (1) that she is disabled; (2) that she was a qualified individual; and (3) that she was discriminated against because of her disability. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001).

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004). The employee then must rebut that reason and show that it was merely pretext for discrimination. See id.

> **a. Plaintiff's discrimination claim fails because she was not qualified to work as a nuclear security officer during the times she was removed from work.**

A "qualified individual" is an individual who can perform the essential functions of the job, with or without reasonable accommodation. 42 U.S.C. § 12111(8). "[C]onsideration shall be

10

given to the employer's judgment as to what functions of a job are essential . . . ." Id. Written policies are considered evidence of essential job functions. See Lucas, 257 F.3d at 1258 ("[A]nd if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job." (alteration in original)). And a job requirement that is mandated by law will often be an essential function of the job. See Albertson's v. Kirkingburg, 527 U.S. 555, 570-73 (1999); Hawkins v. Schwan's Home Serv. Inc., 778 F.3d 877, 895 (10th Cir. 2015) ("Thus, as a matter of law, if an essential function of a position is the ability to operate a commercial vehicle, then being DOT-certified is an automatic, binding, and utterly unavoidable requirement."); Wetherbee v. S. Nuclear Operating Co., No. 1:08-cv-2138-CAM, 2010 WL 11428172, at *6 (N.D. Ga. Mar. 17, 2010) ("A job qualification that is mandated by law constitutes an essential job function.").

Moreover, "[t]he sensitive nature of the nuclear power industry and the extensive regulation of that industry by the NRC both suggest that the consideration given to the employer's determinations in this area should be especially deferential." Lute v. Dominion Nuclear Conn., Inc., 3:12-cv-01412, 2015 WL 1456769, at *11 n.8 (D. Conn. Mar. 30, 2015). Indeed, courts have found being fit for duty an essential job function at NRC-

11

regulated nuclear facilities. Wetherbee, 2010 WL 11428172, at *7 ("Here, an essential job function of the Engineer position at Plant Hatch is that the employee filling that position be determined to be fit for duty as required by the NRC."); Sysko v. PPL Corp., 3:CV-07-0470, 2009 WL 4725240, at *7-8 (M.D. Pa. Dec. 2, 2009).

Defendant argues that Plaintiff was not qualified to hold the position of nuclear security officer during the times she was removed from the position because she was not fit for duty. That is, Defendant maintains, being fit for duty under NRC regulations and Defendant's internal policies is an essential function of the job. Accordingly, because Plaintiff was determined not fit to return to work during the relevant time periods, she could not perform the essential functions of the job. The Court agrees.

As noted above, employees subject to the relevant NRC regulations must be fit for duty, and NRC licensees are required to implement FFD programs. 10 C.F.R. § 26.21. And a licensee has a duty to immediately to remove an employee whose fitness is questionable. 10 C.F.R. § 26.77. In every instance, Plaintiff was removed from work after Defendant received reports of Plaintiff behaving aberrantly. In accordance with NRC regulations and its own policy, Defendant immediately removed her from work pending an FFD determination. And each time she

was removed from work, Plaintiff was found not fit for duty, at least for some period of time. Because the Court finds that being fit for duty is an essential function of Plaintiff's job, she was not qualified under the ADA.

### b. Even if Plaintiff could establish a prima facie case, her claim would fail because she has not produced any evidence of pretext.

Alternatively, Defendant argues that, even if Plaintiff could establish a prima facie case of discrimination under the ADA, she cannot rebut Defendant's legitimate, nondiscriminatory reason for its actions: that she was not fit for duty under NRC regulations and its policy. See Smith v. United Parcel Serv., Inc., 104CV3812-WBH, 2006 WL 3327072, at *10 (N.D. Ga. July 10, 2006) (finding removing a driver for not being DOT certified to be a legitimate, nondiscriminatory reason).

As for pretext, Plaintiff's argument is not entirely clear, but it appears that she takes issues with the facts surrounding her July 2014 removal and the doctors used to evaluate her. "A proffered legitimate, nondiscriminatory reason is not pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason." Lopez v. AT&T Corp., 457 F. App'x 872, 874 (11th Cir. 2012). And a plaintiff must show more than an erroneous decision by an employer. See Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir. 2000) ("A plaintiff must show not merely that the

defendant's employment decisions were mistaken but that they were in fact motivated by [discrimination]."); Smith, 2006 WL 3327072, at *10 ("[E]ven if the DOT physician's opinions concerning Plaintiff's qualifications . . . were based on erroneous information, that would not establish pretext, because Plaintiff offers no evidence that Defendant did not reasonably believe that Plaintiff lacked the requisite DOT certification.").

Regarding the facts surrounding her July 2014 removal, Plaintiff agrees that she became emotional at work, but she claims she did not cry at work.[3] (Doc. 23-7 at 103-105.) It does not appear that she takes issue with the remaining facts. With respect to Defendant's doctors, Plaintiff's brief asserts that the doctors who evaluated her were acting outside of their respective specialties. Plaintiff, however, offers no evidence that Defendant did not reasonably believe the reports about her behavior or the doctors' evaluations. Accordingly, Plaintiff is unable to show that Defendant's reasons for removing her from

---

[3] In her response brief, Plaintiff seems to dispute whether she was emotional at all on the day in question. Plaintiff, however, may not create a factual dispute simply by contradicting her own deposition testimony with unsupported assertions in a court filing. See Lightsey v. Miles, CV 203-171, 2005 WL 1799549, at *7 (S.D. Ga. July 27, 2005) ("An unsubstantiated contention in Plaintiff's brief . . . is not evidence that will create a genuine issue of material fact for trial."). She also provides the declaration of a coworker that states that she did not act emotionally. Putting aside any facial deficiencies with respect to this declaration, the declarant states only that he did not witness Plaintiff become upset. (Doc. 27-1 at 202-203.) This assertion would not dispute evidence that others reported that Plaintiff was acting aberrantly.

work were pretext for discrimination.

Because Plaintiff has failed to establish that she was qualified for the position during the relevant time periods, and because she has not shown that Defendant's reasons for removing her from work were pretext for discrimination, the Court **GRANTS** Defendant's motion on this issue.

**2. ADA Retaliation**

Plaintiff's amended complaint alleges that Defendant retaliated against her for filing workplace concerns. First, Plaintiff argues that Defendant retaliated against her for reporting that her coworkers improperly forwarded pictures from her phone. Next, although it is not clear, Plaintiff seems to argue that Defendant retaliated against her for questioning her removal from work by conducting the time-card investigation. Defendant argues that summary judgment is proper on these claims because Plaintiff did not exhaust her administrative remedies and because they fail on the merits.

    **a. Plaintiff's claims fail because her EEOC charge did not include a retaliation claim.**

Before a plaintiff may file a discrimination or retaliation lawsuit, she must exhaust her administrative remedies by filing a charge with the EEOC. Francois v. Miami Dade Cty., 432 F. App'x 819, 821 (11th Cir. 2011); Maxwell v. Inner Harbour, Ltd., 1:08-CV-2925-RWS, 2009 WL 1045478, at *1 (N.D. Ga. Apr. 20,

2009). "[T]he scope of [a] judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the *charge* of discrimination." Francois, 432 F. App'x at 821 (citation omitted) (internal quotation marks omitted) (emphasis in original) (alterations in original).

On the EEOC charge attached to Plaintiff's amended complaint, Plaintiff checked only the box for disability discrimination. (Doc. 10 at 18.) Below that, she wrote:

> I. I began working for the above named employer on or about January 1, 2009, as a Nuclear Security Officer. On or about July 16, 2014, I was placed on paid administrative leave. On July 22, 2014, I provided documentation that I could return to work without limitations.
>
> II. No reason was given for placing me on paid leave.
>
> III. I believe I am being regarded as having a disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

(Id.) Plaintiff did not check the box for retaliation or reference any facts alleging that she was retaliated against. Accordingly, Plaintiff failed to exhaust her administrative remedies, see Maxwell, 2009 WL 1045478, at *1-2, and her retaliation claims fail.[4]

---

[4] Among the numerous documents attached to Plaintiff's response brief is one page of what looks like an EEOC intake questionnaire. (Doc. 27-1 at 197.) To the extent Plaintiff attempts to assert that this document shows that she did exhaust her administrative remedies, her argument falls short. First, the document does not indicate when Plaintiff completed it. In fact, Plaintiff's brief implies that she may have filled out the form after Defendant moved for summary judgment. (See Doc. 27 ¶ 280.) Additionally, intake questionnaires are not typically considered charges, which must be

16

**b. Plaintiff's retaliation claims also fail on the merits.**

Under the ADA, employers are prohibited from discriminating "against any individual because such individual has opposed any act or practice made unlawful by [the ADA] . . . ." 42 U.S.C. § 12203(a). To establish a prima facie case of retaliation, a plaintiff must show: (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the adverse action and the protected expression. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260-61 (11th Cir. 2001).

> **i. Plaintiff's claim based on her 2012 workplace concern fails because she did not engage in protected conduct.**

As § 12203(a) specifically provides, an employer is prohibited from discriminating against an employee for opposing an act made unlawful by the ADA. See Todd v. McCahan, 158 F. Supp. 2d 1369, 1380 (N.D. Ga. 2000). A plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311-12 (11th Cir. 2002) (citation omitted) (internal quotation marks omitted). And "[w]hile reporting suspicious activity or theft is admirable, it is not

---

verified. See Wilkerson, 270 F.3d 1314, 1317-18 (11th Cir. 2001); see also Francois, 432 F. App'x at 822 ("[A]s a general matter an intake questionnaire is *not* intended to function as a charge." (citation omitted) (internal quotation marks omitted) (emphasis in original)). And the record is unclear as to whether this particular questionnaire was verified because Plaintiff included only one page of the document.

related to opposing any unlawful employment practices and thus does not fall within the confines of the ADA's anti-retaliation provision." Parsons v. First Quality Servs., LLC, 5:10-CV-145 (CAR), 2012 WL 174829, at *10 (M.D. Ga. Jan. 20, 2012). Here, Plaintiff claims that she was retaliated against for reporting that her coworkers forwarded pictures from her phone without her permission. Because Plaintiff's workplace concern bears no relation to any conduct that would arguably violate the ADA, her claim fails.

### ii. Plaintiff's claim based on the time-card investigation fails because she cannot establish a causal connection.

Plaintiff claims that she e-mailed her supervisor, Ms. Barringer, in late July 2014 to inquire about why she had been removed from work earlier that month.[5] (See Doc. 18 at 14-16.) At some point around this time, Ms. Barringer became concerned that Plaintiff was improperly coding her time and informed Mr. Gillenwater of her suspicions. (Doc. 23-5 ¶ 12; Doc. 23-6 ¶ 6.) In early August 2014, Mr. Gillenwater suggested that Defendant's Corporate Investigation group conduct an investigation into the matter, and another employee, Dennis Madison, formally requested an investigation soon thereafter. (Docs. 23-6 ¶ 6; Doc. 23-5 ¶ 12.) Plaintiff argues that the investigation was conducted

---

[5] The e-mails attached to Plaintiff's amended complaint are dated July 29, 2014 (doc. 18 at 14), but Plaintiff claims she originally sent the e-mails on July 24, 2014 (see doc. 27-1 at 128).

because she questioned why she had been removed from work.

"In order to satisfy the 'causal link' prong of a prima facie retaliation case, a plaintiff must, at minimum, generally establish that the defendant was actually aware of the protected expression at the time the defendant took the adverse employment action." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1197 (11th Cir. 1997). "[W]hile [the Eleventh Circuit has] held that awareness of protected expression may be established based on circumstantial evidence . . . [a plaintiff must] show a defendant's awareness with more evidence than mere curious timing coupled with speculative theories." Id. And "in a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression . . . ." Id. Here, although Ms. Barringer initially reported the time-card concern, Mr. Gillenwater suggested the investigation and Mr. Madison formally requested it. There is no evidence in the record that either of these individuals knew about Plaintiff's protected expression. Accordingly, Plaintiff's claim fails.

Because Plaintiff failed to exhaust her administrative remedies for her retaliation claims, and because her retaliation claims fail on the merits, the Court **GRANTS** Defendant's motion on this issue.

### V. Conclusion

For the reasons explained above, the Court **GRANTS** Defendant's motion for summary judgment (doc. 23). The Clerk shall terminate all motions and deadlines and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 30th day of August, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA